Good morning, and may it please the court, Yuri Kolesnikov on behalf of plaintiffs, appellants. With the court's permission, I would like to reserve three minutes for rebuttal. Certainly. Please try to keep your own time. I'll keep my eye on the clock. Buying or selling a house is stressful. First having an appliance go out when you need it the most, or shortly after you purchase a house. No one wants to be left without an air conditioning unit during the searing heat of the summer, or have no heat during the frigid winter. Preying on these fears, First American, during the class period, marketed and sold to millions of consumers home warranty plans which emphasized a valuable replacement coverage. First American promised consumers that if you cannot repair an appliance, you will replace it. This was false. This was false because First American concealed from all of its advertisements, from all the written advertisements, and to the extent there were any oral representations, from anything that it taught to the real estate agents. It concealed several material facts. First, it concealed that it encouraged and incentivized the contractors to repair rather than replace, and to keep the replacement percentages down to arbitrary low levels. It also ranked the contractors based on their repair averages and their replacement percentages, not based on the quality of service. The district court, in this case, refused to certify a class, promising its decision primarily on the affirmative misrepresentations that were disseminated to the consumers. The district court concluded the classification was not proper because there might be individualized issues as to what specific affirmative misrepresentations were disseminated to consumers. The district court erred in not certifying the concealment claim because the concealment claim is differently situated than the affirmative fraud claims. The district court's error was threefold. First, the district court failed to follow Berger and the relevant Supreme Court decisions, which require the court to analyze Rule 23, to do the Rule 23 inquiry on a claim-by-claim basis. In this case, the concealment claim is premised on uniform omissions, information that was omitted from all the advertisements. And First American doesn't dispute that it never told the consumers that, hey, we encourage the contractors to repair rather than replace. First American's position has always been that it doesn't do that. So it would not have included that statement in any of its advertisements. It did not include it, and that information was never disclosed to consumers. Now, whether or not First American actually did it is not the question before the court. It was not the question before the district court. All claims have to show is that their claims either succeed or fail based on common evidence. Here, if a trial, common evidence shows that First American did not instruct its contractors to repair rather than replace, did not rank them as we intend they did based on their repair averages, replace percentages, then there will be no materiality, there will be no concealment. All claims will fail as one. The district court failed to do this analysis by treating all four claims the same and by failing to look at whether or not there was uniform statements that were omitted from the advertisements. The district court decision also ran afoul of this court's decision in Yokohama, which indicated, which held that the district court errs as a matter of law if whether the materiality issue that is based on objective reasonable standard and the district court denies classification. Well, wasn't one of the grounds that the district court denied it was that different purchasers, that the name insurers weren't always the same as the purchasers and the purchasers would have seen different marketing materials depending on who actually was the purchaser? That was one of the reasons stated by the district court, but again, that does not go to the concealment claim. Regardless of which advertisements were disseminated to the purchaser or to the seller or to the real estate agent, there is no dispute that none of them indicated that First American has a scheme in place where it incentivizes the contractors to repair rather than replace. Do they all make the representation of repair or replace? Yes, they did, Your Honor. You can show that every inducement to purchase made the representation repair or replace? Correct, Your Honor, and I think as we cited in our brief, while the advertisements definitely differed in how they made their representation, they all included it. For example, some brochures said we will replace covered items that fail when we determine they cannot be repaired. Others said replacement of any covered appliance or system we cannot fix. You get repair or replacement coverage. And in case of Ms. Hershey, imagine you could get a new range or oven for just $60 because if we can't repair it, we'll replace it. The promise throughout all the contracts, throughout all the advertisements, throughout all the training that was given to the real estate agents, and even admitted in defendants' own brief that the whole warranty that they promised was valuable because it has replacement coverage. I think defendants tout that benefit on page 13 of their own brief. So there is no dispute that the advertisements and the contracts themselves promised repair or replacement. Nor is there a dispute that none of them actually disclosed that contrary to that promise, what the consumers are really getting is a less valuable, less lucrative repair only policy because unbeknownst to the consumers, First American was ranking their own contractors based on their repair averages and based on their low replacement percentages. When First American managers contacted the contractors, they would always make sure to discuss with them how they're doing compared to other contractors in the area, how the replacement percentages compared to other contractors, and encouraging them to be repair-oriented. Keep your replacements down because if you don't, you're not going to get any work. And a contractor who's faced with a situation where if they do replace more than First American wants, and they lose their business, is justifiably incentivized to repair rather than replace, to keep the replacement percentages. You have a strong argument that the same representation was made to everyone. So how do you deal with the reliance issue? Well, under California law, if the trial court finds material misrepresentations were made to the class members, there is an inference of reliance that would arise as to the entire class. In this case, the trial court erred by failing to give plaintiffs an inference or presumption of reliance. And the trial court did it, again, by focusing on the fact that, well, different consumers may have been exposed to different versions of advertisements. And while we dispute that as an affirmative fraud action, they have no relevance or bearing as to whether the plaintiffs are entitled to presumption of reliance on the consumer claim. Do you agree with this proposition that to be entitled to a class-wide presumption of reliance, plaintiffs must come forward with evidence that the allegedly false representations were uniformly made to all members of the class? Do you agree with that? And if so, did the plaintiffs come forward with such evidence? Well, again, if the statement is that they have to be saying false misrepresentations were made to the consumers, that's not the case in this case. We have to show that uniform omissions were made to all the class members. Now, there is some language in defense society, in their brief, in Merkin, which says, well, if they were never exposed to anything at all, then they do not have a claim for omission. In this case, this obviously is exposure. The class consists of consumers who either purchased or were named as insured on the home warranty plan. Obviously, if they were named as insured on the home warranty plan, they got the home warranty plan, and the home warranty plan, as we cited in the brief, touted the repair or replacement coverage. If there was a purchaser and they were not listed on the home warranty plan, or for some reason they did not get the home warranty plan, the same promise of the replacement coverage was communicated to them, either through the advertisements or through the real estate agents. And under California law, consumers can rely on the misrepresentations that were made to the real estate agents and then passed on to them. Again, West American spent a lot of money training the real estate agents. It sent them free marketing materials. It sent them scripts. It provided the same misrepresentations as it provided to the consumers to the real estate agents. Real estate agents were taught to emphasize the replacement coverage, that there is a valuable replacement coverage present in West American plans. And again, I think it's important in this case to look at the two decisions of this Court, which we think were persuasive and dispositive in this case. One, as I referenced before, is the Oklahoma decision. Again, in that case, plans purchased annuities sold by independent brokers. Plans alleged the defendant marketed the annuities through deceptive practices. This Court denied classification because of the concern that there were different representations potentially made or related to different consumers. This Court reversed, indicating that because Hawaii law has an objective test as to the materiality, this Court erred as a matter of law in holding that individual reliance would be necessary. The same is true here. Another decision that is very important to keep in mind is the Volin v. Jaguar Land Rover. In that case, plaintiffs alleged that the vehicle that they purchased suffered from alignment defect, which caused a premature tire wear. The District Court denied classification, saying, well, there are individual issues as to what actually caused the tire wear in each individual case. On appeal before this Court, defendant defended the District Court's decision by arguing, well, we will present evidence eventually during the trial that each individual person's tires wore out for different reasons, such as weather and driving habits. This Court reversed and said the District Court erred in denying classification. It was regardless of what each individual person's tires, why they wore out, that there were still predominant common questions as to whether did the defect exist, did the manufacturer know about the defect, did the manufacturer have a duty to disclose the defect, and was there a failure to disclose actionable under the Casima statute. The same is true here. The predominant common questions are, did First American have a policy in place encouraging repairs or other replacements? Did it have a duty to disclose it? As this Court previously, in the same case four years ago, this Court heard an appeal from the District Court's dismissal of plaintiff's concealment and use of claims, the same claims that are before this Court now, and the Court held that there is affirmatively a duty on the defendant to disclose material facts about the comorbidity plans. So even if there are some individual issues, and even if there are individual issues and damages, that doesn't fit the fact that under Yokohama and Volin, the concealment claim is uniquely situated and uniquely appropriate for class certification because there are predominant common questions. And unless there are any other questions, I would like to reserve the balance of my time for rebuttal. Thank you. Good morning. If it may please the Court, my name is Joel Siegel, and I represent First American. I'd like to start with a discussion of the Yokoyama case. It was cited, I believe, approximately three dozen times in the appellant's papers, and it has continued to be relied upon today. Yokoyama and the holding in it, and particularly the facts of Yokoyama, really belie the issues being presented here today. In Yokoyama, there was a uniform disclosure document that went out to every single class member, the senior citizens who applied for and purchased an annuity product that allegedly failed to disclose that it was subject to the vagaries of the stock market. It was not only conceded, it was underscored by a robust inventory record because the very brokers who were selling these annuities to the senior citizens in the state of Hawaii had to certify that each and every applicant received the exact same disclosure document. Nothing could be farther from the facts that were analyzed after presentation to the district court and formed the basis of that reasoned 56-page decision. In this case, far from a uniform statement made to the entire class, such as underscored the decision in Yokoyama, we had first multiple sales channels. They were divided for convenience into categories, the realty sales channel, the renewal sales channel, the direct-to-consumer sales channel. Let's assume that, as would be necessary for an affirmative misrepresentation, let's assume that everybody got different representations. So it wouldn't be an appropriate class because not everyone received the document that supposedly contains the misrepresentation. So then we come to the other type, which is the omission. Now, if you have a duty to disclose something and you don't disclose it, does it really matter what kind of misrepresentations you made? And why isn't that a class if the omission you have a duty to disclose was not disclosed to anybody? That's an excellent question. Let me answer it in two parts. The issue, I believe, what the Court is raising is one of exposure. So first we begin with, regardless of whether there were different marketing materials given to different realtors or avenues of distribution, does that matter? Because there was some exposure, right? And therefore, if you had a duty to present some added fact, regardless of which document you got, does it matter? And the issue is, yes, it does, because without exposure to something, then you don't get to the second level of, you know, you don't get that presumption that everybody in the class could have been relied or you'll have a presumption. Suppose you have a statute that said if the company is run by a convicted felon, you must disclose that in whatever statements you make. And you didn't do it. The closest analogy in this case to your Honor's question is Section 332 of the Insurance Code, which came up in DS2, as I'm sure the Court is aware. Section 332, however, which is a duty for the insured, and it's a mutual duty to disclose material facts. If I'm applying for insurance, I need to disclose that I've had certain medical conditions, what have you. And that's a mutual duty. Section 332 appeared nowhere in the motion for class certification at issue in this case, nor did it apply in the reply brief file in support of that motion for class certification. 332 did come up in DS2, which was a pleading context, the Court reviewing the dismissal of certain claims, cause of action under Rule 12 early on in the case. But at the time of the motion for class certification, what was presented to the Court was an omnibus fraud claim, and it was omnibus in the sense that it referenced Civil Code Section 1710, 1 through 4, which is another fraud code in California, and put that to the Court. We've heard criticism today that the Court did not piecemeal things out. What the Court did was take on what was given to it, and it was not presented with a Section 332 argument. Section 332 was wholly absent. If I may, may I continue? Was there a reliance on the California Civil Code, 1710? 1710 was cited in omnibus fashion 1 through 4, including the concealment fraud, which is 1710-3, as part of that. And so what the Court did was look at the claim that we've heard today, which was there were standardized materials that were uniformly disseminated directly or indirectly through realtors or to consumers, and the Court found otherwise. And it's not clearly that those findings, which comprise the 56-page order, were not clearly erroneous. In fact, the Court found, to the contrary, that there was no evidence that all of the plaintiffs were exposed to any representation, were not exposed to any representations about First American, much less the alleged misrepresentations. And, in fact, the lead plaintiff, Ms. Carrera, while not dispositive of the issue, the lead plaintiff, Ms. Carrera, is a classic example. Her realtor, a friend of the time, purchased it for her as a gift. Mr. Morrison's realtor purchased it for him, and the realtor explained that he made the decision to purchase the First American Warranty as opposed to some other product out there because, based on his customers' experiences, he had heard positive things. It was the antithesis of, setting aside the lack of uniformity in the materials themselves, the lack of any type of uniformity in exposure. Again, as the District Court held, not all these representations even included the alleged misrepresentations. What's a misrepresentation as opposed to an omission? There was a California statute saying that, with wheelchairs, you always have to disclose how long the wheelchair, what its practical life, what its duration is, how long it'll be usable. And you must disclose that to the purchasers. And they didn't do that. Would that not be a violation, or wouldn't that not be an appropriate class? If nobody was told what the statute said, you must tell them? It certainly could be, Your Honor. But in this case, what plaintiffs have done is take misrepresentations, i.e., the alleged misrepresentation that something would be repaired or replaced, and turn that into a concealment claim by saying, you didn't tell people that was false. That's the claim. They've tried to back out of the affirmative misrepresentation claims. In fact, they don't appeal those findings of the district court. But they simply recast them now all as concealment. And there's no independent fact, like the wheelchair example, something like that, that they can cite to. Instead, what they're arguing is, well, the truth of the matter was these statements were false. Therefore, it's a concealment claim. And somehow, because it's a concealment claim, we don't have to deal with the legal burden to show, as the class asserted, that there was some exposure. You're asserting they didn't plead an omission claim, or they didn't show any evidence of an omission claim. They didn't. Well, I think, as the district court found, they didn't show any uniform. Yes, I think that's correct, if I understand your question. I think the answer is correct. Did the district court say that there was no omission claim? No, I do not believe the court did that. What the court did was take on the fraud claim in total under 1710 through 1 through 4. Do you think that the appeal raises a failure to deal with the omission claim? No, I do not believe so, Your Honor, because there's no separate omission. It wasn't. It's not a situation. Whereas, in this case, the First Americans sent out marketing materials consistently or inconsistently that said, okay, we repair or replace, but then omitted, concealed, if you will, the separate fact that, by the way, we won't send a contractor out for 14 days, something wholly distinct and separate. Well, it would have to be a duty to state that before you could have an omission. Correct. All right. Correct. In addition to the grounds set forth in the district court's opinion, there is an additional ground to affirm the decision in this case, and I'd like to address that briefly. Mindful of this court's decision, and I hope I'm not over-emphasizing the Becerra case, I think the issue arises under a superiority analysis, and that is the restitution model, if any, that was presented to the district court and not ruled upon because she didn't have to get there based on the findings that she made. But what was ultimately put forth in this case was the idea that there would be a cheaper, less valuable policy, a cheaper policy you could get. If there was no repair or replace promise and it was just a repair policy, somehow that would be a cheaper policy and form the basis of restitution. And I would just like to highlight that that analysis would get us into a world far more complex, I suggest, than even the court in Vioxx had to deal with, given the fact that we have all purchasers in this class, anyone who paid for policies in this class, including the realtors themselves. The idea that there would be anything short of an individual inquiry as to what other comparable product that realtor, that seller, that purchaser, that buyer, that renewing person would have purchased is a morass. And at best, what Ms. Carrera and her co-plaintiffs did was put forth a couple of examples attached as Exhibit, I believe, 82 to the Boe, Tooney Declaration, of a couple of other home warranty products. I believe they were issued out of Florida, and with the promise that if they got to trial, they would somehow be able to show that everybody in the class, on a classified basis, would have chosen a specific comparable product. And having reread Vioxx recently, which is a tough read, I would submit that trying to figure out which of the hundreds of competing products out there a realtor would have picked in a given instance to suggest, recommend, or in fact purchase for their client is simply not subject to, well, it's not manageable, and it undercuts superiority. Thank you. Thank you, Kevin. Thank you very much. Just briefly on the first point made in our brief oral argument, the case law is clear that the district court had an obligation to do a claim-by-claim analysis regardless of how it was presented to the district court. And I just quote from Berger, although the district court's order that we are reviewing here did not do so, we must analyze each of the plaintiff's claims separately. So the district court had an independent duty regardless of how the motion was structured, and the motion did ask for certification of the concealment claim in addition to the other five claims. It was presented to the court, and the court acknowledged in the legal standard section that it had a duty to do a claim-by-claim analysis, but then it didn't do it. On the issue of exposure... What was the omission claim? The omission claim is the fact that all the advertisements, all the representation by the real estate agents never told the consumers that the First American has an undisclosed policy of encouraging the contractors to repair rather than replace and to keep the repair averages down and the replacement percentages down to single-digit levels. That was what was not told to the consumers would be material to the consumers. And I think on the exposure issue, I think we cited the Committee on Children's Television. That's a very good case. The manufacturer, they give the advertisements to the children, knowing the children will influence the parents. And similar here, the First Americans are aware of the consumers' purchase plans. The consumers don't exercise total independent judgment, but are influenced by the recommendation of the real estate agents. And therefore, here, the First American really encouraged the real estate agents to tower the replacement coverage, which is very valuable. And I see my time is up. Maybe just briefly touch upon damages model. Pardon me? Can I briefly... Yes, I was wondering about that because usually in class action, you would do liability and then there's often some kind of referee does the allocation of damages. People have to put in a claim of proof on their damages. Right. I mean, I think this court's case was pretty clear that damages does not defeat class certification. The court reaffirmed it recently in Pulaski. And just in Pulaski, this court found sufficient where the plaintiff proposed a model which looked at the difference between what the advertisers actually paid and what they would have paid had Google informed them that their ads would be in place on less lucrative websites. The same is true here. We propose a damages model where the difference would be what the value was with replacement coverage versus what the value was with less lucrative repair-only coverage. Anyone else have any questions? Thank you, Kevin. Thank you, Your Honor. This hearing will be submitted.
judges: Reinhardt, Wardlaw, Daniel